**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SONY INTERACTIVE ENTERTAINMENT LLC, | |
| Plaintiff, | Case No. 25-cv-01054 |
| v. | **Judge Manish S. Shah** |
| WENHONGHONG, et al., | **Magistrate Judge Maria Valdez** |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR**
**SUMMARY JUDGMENT AND AN AWARD OF STATUTORY DAMAGES**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ......................................................................................... iv

I.     BACKGROUND ................................................................................................. 1

   A.  The PlayStation® Brand, PlayStation® Products, and PLAYSTATION Trademark ........ 1

   B.  Defendant's Counterfeit Product ................................................................. 5

   C.  Procedural History ....................................................................................... 6

II.    PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ............................................. 7

   A.  Summary Judgment Standard ....................................................................... 7

   B.  Plaintiff Is Entitled to Summary Judgment Against Defendant on Its Trademark Infringement and Counterfeiting Claim ...................................................................... 7

      i.   The PLAYSTATION Trademark is Federally Registered ................................................ 8

      ii.   Defendant Used an Infringing and Counterfeit Reproduction of the PLAYSTATION Trademark ............................................................................ 8

      iii.    Defendant's Use of the PLAYSTATION Trademark Is Likely to Cause Confusion Among Consumers ...................................................................................... 9

   C.  Plaintiff Is Entitled to Summary Judgment Against Defendant on Its False Designation of Origin Claim ........................................................................................................ 12

III.   PLAINTIFF IS ENTITLED TO A STATUTORY DAMAGES AWARD AGAINST DEFENDANT FOR TRADEMARK COUNTERFEITING ........................................... 12

   A.  The Value of the PLAYSTATION Trademark and Plaintiff's Enforcement Efforts ........ 14

   B.  Defendant's Counterfeiting of the PLAYSTATION Trademark Was Willful ................. 14

C.   Defendant Rendered it Impossible for Plaintiff to Determine the Scope of, or Prove, Actual Damages .......................................................................................................................... 15

D.   Defendant's Wide Exposure Over the Internet Merits Statutory Damages Award .......... 16

E.   The Statutory Damages Award Must Sufficiently Deter Defendant and Similar Online Sellers ................................................................................................................................... 17

IV.   PLAINTIFF IS ENTITLED TO ATTORNEY FEES AND COSTS ............................... 17

VI.   CONCLUSION .................................................................................................................. 18

# TABLE OF AUTHORITIES

## Cases

*AutoZone, Inc. v. Strick*, 543 F.3d 923 (7th Cir. 2008) ................................................. 10

*CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660 (7th Cir. 2001) ............................... 9, 11, 12, 13

*Chi-Boy Music v. Charlie Club*, 930 F.2d 1224 (7th Cir. 1991) ................................. 14, 15

*Coach, Inc. v. Treasure Box, Inc.*, No. 3:11 CV 468, 2013 U.S. Dist. LEXIS 76607 (N.D. Ind. May 31, 2013) .................................................................................................... 12

*Curry v. Revolution Labs., LLC*, No. 17 C 2283, 2024 U.S. Dist. LEXIS 114989 (N.D. Ill. June 30, 2024) ........................................................................................................... 20

*Deckers Outdoor Corp. v. Australian Leather Pty*, No. 16 CV 3676, 2020 U.S. Dist. LEXIS 150474 (N.D. Ill. July 13, 2020) .................................................................... 18

*Entm't One UK Ltd. v. 2012shiliang,* 384 F. Supp. 3d 941 (N.D. Ill. 2019) ................ 11

*H-D U.S.A., LLC v. Guangzhou Tomas Crafts Co.,* No. 16-cv-10096, 2017 U.S. Dist. LEXIS 207613 (N.D. Ill. Dec. 18, 2017) ......................................................... 16, 19, 21

*H-D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000 (E.D. Wis. 2018) ............... 17

*James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266 (7th Cir. 1976) ............ 10

*Lorillard Tobacco Co. v. J.J. Shell Food Mart, Inc.*, 2005 U.S. Dist. LEXIS 26626 (N.D. Ill. Oct. 27, 2005) ..................................................................................................... 15

*Lorillard Tobacco Co. v. S&M Cent. Serv. Corp.,* 2004 U.S. Dist. LEXIS 22563 (N.D. Ill. Nov. 5, 2004) ............................................................................ 14, 15, 16, 18

*Louis Vuitton S.A. v. Lee*, 875 F.2d 584 (7th Cir. 1989) ............................................. 18

*Luxottica Grp. S.p.A. v. Chen*, 2017 U.S. Dist. LEXIS 29999 (N.D. Ill. Mar. 2, 2017) .............. 17

*Microsoft Corp. v. Rechanik*, 249 F. App'x 476 (7th Cir. 2007) .................................. 9

*Monster Energy Co. v. Meng Chun Jing*, No. 15 C 277, 2015 U.S. Dist. LEXIS 86956 (N.D. Ill. July 6, 2015) ................................................................................................. 16

*Phx. Entm't, LLC v. Rumsey*, 829 F.3d 817 (7th Cir. 2016) ....................................... 8

*Sands, Taylor & Wood v. Quaker Oats Co.,* 34 F.3d 1340 (7th Cir. 1994) ............. 15, 20

*Sorensen v. WD-40 Co.*, 792 F.3d 712 (7th Cir. 2015)................................................................. 11

*Te-Ta-Ma Truth Found.-Family of URI, Inc. v. World Church of the Creator*, 392 F.3d 248 (7th Cir. 2004) ............................................................................................................................. 20

*Tobinick v. Scripps Clinic Med. Group*, 81 Fed. Appx. 677 (9th Cir. 2003)................................. 14

*Wheeler v. Lawson*, 539 F.3d 629 (7th Cir. 2008) ......................................................................... 7

*Wildlife Exp. Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511 (7th Cir. 1994)...................... 17

## Statutes

15 U.S.C. § 1065 ............................................................................................................................. 4

15 U.S.C. § 1114(1)(a)..................................................................................................................... 8

15 U.S.C. § 1116(d)(1)(B) ............................................................................................................... 8

15 U.S.C. § 1117(a) ................................................................................................................... 20, 21

15 U.S.C. § 1117(b)......................................................................................................................... 8

15 U.S.C. § 1117(c) ......................................................................................................................... 8

15 U.S.C. § 1117(c)(1)..................................................................................................................... 14

15 U.S.C. § 1117(c)(2)..................................................................................................................... 14

15 U.S.C. § 1117(d) ........................................................................................................................ 13

15 U.S.C. § 1127 ............................................................................................................................. 8

15 U.S.C. §§ 1115(b)....................................................................................................................... 8

## Rules

Fed. R. Civ. P. 56(a) ....................................................................................................................... 7

v

<u>**MEMORANDUM**</u>

Pursuant to Fed. R. Civ. P. 56, Plaintiff Sony Interactive Entertainment, LLC ("Plaintiff" or "SIE") submits this Memorandum in Support of its Motion for Summary Judgment on its trademark infringement, counterfeiting and false designation of origin claims, an award of statutory damages on its trademark infringement and counterfeiting claim, and an award of attorney fees and costs against Defendant LIQUAN Co.Ltd (identified as Def. No. 76 on Schedule A to Complaint [1]) ("Defendant").  Plaintiff also seeks entry of a permanent injunction prohibiting Defendant from advertising, offering for sale, and/or selling products using the PLAYSTATION Trademark and an order that all assets in Defendant's financial accounts be transferred to Plaintiff.

## I.    BACKGROUND

### A.    The PlayStation® Brand, PlayStation® Products, and PLAYSTATION Trademark

Plaintiff, together with Sony Interactive Entertainment Inc. ("SIE Inc.") in Tokyo, Japan, is one of the global leaders in video games and responsible for developing the internationally recognized PlayStation® brand and family of products and services.  [Plaintiff's Local Rule 56.1 Statement of Material Facts in Support of its Motion for Summary Judgment and a Statutory Damages Award ("PSF") 7].  Launching over thirty years ago in Japan on December 3, 1994, the first PlayStation® console was a huge success when it was introduced in the United States in 1995.  [PSF 8].  Plaintiff and SIE Inc. manufacture, produce, market, advertise, offer for sale and sell a wide variety of products using the famous PLAYSTATION trademark, including video game consoles, video games, peripheral accessories, and related consumer goods in the United States (collectively, "PlayStation® Products").  [PSF 9-11].

The PlayStation® brand has enjoyed great success throughout the United States and the world.  [PSF 12].  Plaintiff has produced five of the top ten best-selling video game consoles of all

1

time, including the PlayStation® 2, the most successful video game console of all time with over 160 million units sold as of March 2012. [PSF 12]. As of March 2025, 544.5 million units of PlayStation® consoles[1] have been sold worldwide and each PlayStation® console includes at least one PlayStation® controller. [PSF 13]. The PlayStation® controller, with "[i]ts parallel thumbsticks, shoulder buttons, and symbol-clad buttons ha[s] become iconic" according to Business Insider. [PSF 14]. Since its debut in 1994, PlayStation® controllers have four action buttons, each button having its own distinctive symbol: Δ, O, X, and □, as shown in Figure 1 below. [PSF 15].



*Figure 1*

As shown in Figure 1 above, for PlayStation® controllers where the symbols are in color, the triangle Δ is green, the circle O is red, the X is blue, and the square □ is pink. [PSF 16]. The colors of the symbols on the PlayStation® controller buttons were a deliberate design choice, and all PlayStation® controllers that have symbols in color maintain the color scheme shown in Figure 1. [PSF 17]. The symbols on the PlayStation® controller buttons have become iconic. [PSF 18].

---

[1] PlayStation®, PlayStation® 2, PlayStation® 3, PlayStation® 4, and PlayStation® 5.

Plaintiff offers for sale and sells various PlayStation® Products associated with the PlayStation® controller button symbols, such as the general examples shown in Figure 2 below. [PSF 19].

  

*Figure 2*

Genuine PlayStation® Products are distributed and sold to consumers through authorized retail channels throughout the United States, including Illinois. [PSF 20]. Genuine PlayStation® Products are also distributed and sold through Plaintiff's website, gear.playstation.com, and other online authorized retailers including, but not limited to, Walmart (walmart.com), Paladone (via amazon.com), Just Geek, (justgeek.com), and Insert Coin Clothing (insertcoinclothing.com). [ PSF 21].

Plaintiff sells a PlayStation® controller button symbol-themed light through the Paladone Amazon storefront for $21.95, as shown in Figure 3 below. [PSF 22].

3



*Figure 3*

PlayStation® Products have become exceptionally popular, driven by Plaintiff and SIE Inc.'s arduous quality standards and innovative designs. [PSF 23]. Among the purchasing public, genuine PlayStation® Products are instantly recognizable as such. [PSF 23].

The below registration is registered by SIE Inc. with the U.S. Patent and Trademark Office on the Principal Register (the "PLAYSTATION Trademark"). [PSF 24]. Plaintiff has been granted the right by SIE Inc. to bring and prosecute actions involving the PLAYSTATION Trademark owned by SIE Inc. in the United States via a business agreement. [PSF 9].

| Registration No. | Trademark |
|---|---|
| 6,082,275 | △ ○ ✕ ☐ |

The above U.S. registration for the PLAYSTATION Trademarks is valid, subsisting, and in full force and effect. [PSF 25]. The PLAYSTATION Trademark has been used continuously and has never been abandoned. [PSF 26]. The PLAYSTATION Trademark is used to advertise, promote, and market PlayStation® Products. [PSF 27].

Plaintiff and SIE Inc. have expended millions of dollars in advertising, promoting, and marketing featuring the PLAYSTATION Trademark. [PSF 28]. In 2020, Plaintiff partnered with

4

Transport for London to launch a takeover advertising campaign where four of the Oxford Circus station signs were remade into the shape of the PlayStation® controller button symbols: Δ (in green), O (in red), X (in blue), and □ (in pink).  [PSF 28].  In 2024, for PlayStation's® 30th Anniversary, Plaintiff and SIE Inc. launched an enormous, multifaceted campaign which included providing free downloadable wallpapers featuring the PLAYSTATION Trademark and releasing the Shapes of Play collection, a series of games with toy versions of the PlayStation® controller button symbols through the playstation.com website.  [PSF 28].

**B.    Defendant's Counterfeit Product**

Defendant is a Chinese entity that operates an e-commerce store on Walmart.com ("Walmart") under the seller alias identified as LIQUAN Co.Ltd.  [PSF 2].  Defendant advertised, offered for sale, and sold a light using the PLAYSTATION Trademark (the "Counterfeit Product") on its Walmart store.  [PSF 29].  The Counterfeit Product is offered for sale and sold for $16.36.  Figure 4; [PSF 29].



*Figure 4*

Specifically, as shown in Figure 4 above, the Counterfeit Product includes an infringing and counterfeit reproduction of the PLAYSTATION Trademark.  Figure 4; [PSF 30].  Plaintiff reviewed the product listing for the Counterfeit Product and determined Defendant infringed the PLAYSTATION Trademark.  [PSF 31-32, 35].  Plaintiff has not licensed or authorized Defendant

5

to use the PLAYSTATION Trademark, and Defendant is not an authorized retailer of genuine PlayStation® Products. [PSF 39].

On November 15, 2024, Plaintiff's investigators ordered the Counterfeit Product from Defendant, entered an Illinois address (which was Plaintiff's counsel's address) as the shipping address, and paid for the Counterfeit Product. [PSF 36]. Plaintiff's investigators received an order confirmation (Order No. 2000126-16493419) and an e-mail of the estimated delivery date. [PSF 37]. On November 17, 2024, Plaintiff's investigators received a subsequent e-mail that the Counterfeit Product had shipped to the Illinois address. [PSF 38].

During discovery, Defendant produced screenshots indicating that between May 21, 2021, and May 20, 2025, Defendant sold and accepted money for 16 units of the Counterfeit Product. [PSF 41-43]. However, Defendant did not indicate whether that was the totality of Defendant's sales of the Counterfeit Product. [PSF 43]. The screenshots also did not indicate the identity or location of the purchasers, shipping addresses, the dates of each purchase, or the status of the shipments. [PSF 43]. Further, the screenshots were only indicative of sales of one product (ID 5003310394); Defendant did not complete a search for other products that infringe the PLAYSTATION Trademark or provide Plaintiff a list of its other products that would allow Plaintiff to investigate whether those products infringe the PLAYSTATION Trademark. [PSF 44]. Defendant also did not provide an accounting for funds restrained in its Walmart account. [PSF 47].

### C. Procedural History

Plaintiff filed this action on January 30, 2025 [1]. On February 5, 2025, the Court entered a Temporary Restraining Order ("TRO")[2] that, among other things, enjoined Defendant from

---

[2] The Court entered a Preliminary Injunction extending the relief granted in the TRO for the pendency of this action. [37].

infringing the PLAYSTATION Trademark, and ordered Walmart to provide expedited discovery regarding Defendant's contact information and sales and restrain funds in Defendant's Walmart account.  [21] at ¶¶ 1-2, 4-5.  On February 13, 2025, pursuant to the TRO [21], Walmart provided Defendant's contact information, indicated that the balance of Defendant's Walmart account was $44,444.93, and confirmed that the account had been restrained.  [PSF 40].

## II.    PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT

### A.    Summary Judgment Standard

A district "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The moving party bears the initial burden of demonstrating that these requirements have been met; it may discharge this responsibility by showing 'that there is an absence of evidence to support the non-moving party's case.'"  *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008).

### B.    Plaintiff Is Entitled to Summary Judgment Against Defendant on Its Trademark Infringement and Counterfeiting Claim

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act when it, "without the consent of the registrant[,] use[s] in commerce, any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods ... on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a).  To prevail on a trademark infringement claim, "a plaintiff must be able to show (1) that its mark is protectable, and (2) that the defendant's use of that mark is likely to cause confusion among consumers." *Phx. Entm't, LLC v. Rumsey*, 829 F.3d 817, 822 (7th Cir. 2016) (internal citation omitted).

i.    The PLAYSTATION Trademark is Federally Registered

The PLAYSTATION Trademark is registered with the United States Patent and Trademark Office on the Principal Register.  [PSF 24].  This is *prima facie* evidence of the registration and validity of the PLAYSTATION Trademark, ownership of the PLAYSTATION Trademark, and the exclusive right to use the PLAYSTATION Trademark in commerce.  15 U.S.C. § 1115(a).  As such, Plaintiff satisfies the first element of its claim.

ii.    Defendant Used an Infringing and Counterfeit Reproduction of the PLAYSTATION Trademark

Trademark infringement amounts to counterfeiting when an infringer (1) uses a "spurious mark which is identical with, or substantially indistinguishable from, a registered mark,"[3] (2) in connection with the same goods referenced in the registration certificate.  *See* 15 U.S.C. §§ 1116(d)(1)(B), 1117(b)-(c), 1127.  Here, Defendant advertised, offered for sale, and sold a light that included a mark that was identical to, or substantially indistinguishable from, the PLAYSTATION Trademark.  Figure 4, *supra*.  [PSF 29-30].  Specifically, the Counterfeit Product is a light of the PlayStation® controller button symbols Δ, O, X, and □ from left to right.  The PLAYSTATION Trademark is the symbols Δ, O, X, and □ from left to right.  Lights are the same goods referenced in the PLAYSTATION Trademark registration certificate.  *See* [PSF 24].  As such, Defendant's trademark infringement amounts to counterfeiting within the meaning of 15 U.S.C. § 1127.

---

[3] *See* Joint Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. H12076, H12078 ("Spurious" means "not genuine or authentic").

iii. <u>Defendant's Use of the PLAYSTATION Trademark Is Likely to Cause Confusion Among Consumers</u>

As to the second element of Plaintiff's trademark infringement claim, the question of whether a defendant's use will cause a likelihood of confusion "may be resolved on summary judgment 'if the evidence is so one-sided that there can be no doubt about how the question should be answered.'" *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 677 (7th Cir. 2001).

Under Seventh Circuit precedent, when "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). Defendant used a mark that was identical to, or indistinguishable from, the PLAYSTATION Trademark to capitalize on the popularity and success of the PlayStation® brand and the iconic PlayStation® controller button symbols: Δ, O, X, and □. Figure 4, *supra*. [PSF 29-30]. As such, there is a presumption that Defendant's unauthorized use of the PLAYSTATION Trademark is likely to cause confusion among consumers.

The result is the same when considered in light of the Seventh Circuit's seven factors to determine whether there is a likelihood of confusion, which include: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree and care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any actual confusion; and, (7) the intent of the defendant to "palm off" its products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008).

| Defendant's Counterfeit Product | Genuine PlayStation® Product |
|---|---|
|  |  |

*Table 1*

As shown in Table 1 above, Defendant's Counterfeit Product uses a mark identical to the PLAYSTATION Trademark, the PlayStation® controller button symbols Δ, O, X, and □ from left to right. Table 1; [PSF 29-30]. Further, Plaintiff offers for sale and sells a genuine PlayStation® light which uses the PLAYSTATION Trademark, the PlayStation® controller button symbols Δ, O, X, and □ from left to right. Figure 3; [PSF 22]. Thus, consumers who encounter Defendant's Counterfeit Product are likely to believe that it is associated with the PlayStation® brand and are further likely to believe that the Counterfeit Product is a genuine PlayStation® Product. *See AutoZone,* 543 F.3d at 929 (the test for the first factor "is whether . . . the viewer of an accused mark would be likely to associate the product or service with which it is connected with the source of products or services with which an earlier mark is connected.") (quoting *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 275 (7th Cir. 1976)); *see Sorensen v. WD-40 Co.*, 792 F.3d 712, 728-29 (7th Cir. 2015) ("The relevant inquiry with respect to the similarity of the products factor is . . . whether the products are the kind the public might very well attribute to a single source") (internal citation omitted). Thus, the first and second factors favor Plaintiff.

Regarding the third factor, courts consider "whether the parties use the same channels of commerce, target the same general audience, or use similar marketing procedures." *Sorensen*, 792 F.3d at 730. The general rule is that "the more widely accessible and inexpensive the products . . . the more likely that consumers will exercise a lesser degree of care and discrimination in their purchases." *AutoZone*, 543 F.3d at 933 (quoting *CAE*, F.3d at 683). Here, both Plaintiff and Defendant sell products bearing the PLAYSTATION Trademark through Walmart. [PSF 2, 21, 29]. The Counterfeit Product is offered for sale and sold for $16.36, and a substantially identical, genuine PlayStation® light is sold on Amazon for $21.95. [PSF 22, 29-30]. Because both

10

Plaintiff's and Defendant's products are widely accessible with the same and similar online retailers for a low price, the third and fourth factors also favor Plaintiff. *Entm't One UK Ltd. v. 2012shiliang,* 384 F. Supp. 3d 941, 951 (N.D. Ill. 2019) (finding that "[b]ecause [Plaintiff's and Defendant's] products were widely accessible for anyone to purchase on eBay, and sold at a low price point, this factor weighs in Plaintiff's favor").

As to the fifth factor, the stronger the mark, the more likely confusion will occur. *AutoZone,* 543 F.3d at 932. The PlayStation® brand is internationally recognized; over 544 million units of PlayStation® consoles have been sold worldwide, earning Plaintiff millions of dollars in revenue annually. [PSF 13]. The PlayStation® controller button symbols Δ, O, X, and □ in the PLAYSTATION Trademark have become iconic. [PSF 14, 18]. The PLAYSTATION Trademark has been used in commerce in the United States and all over the world for many years. *See* [PSF 24]. Plaintiff and SIE Inc. have expended millions of dollars advertising, promoting, and marketing the PLAYSTATION Trademark. [PSF 28]. *See Coach, Inc. v. Treasure Box, Inc.*, No. 3:11 CV 468, 2013 U.S. Dist. LEXIS 76607, at *19 (N.D. Ind. May 31, 2013) ("Coach has established that its Marks are strong, as evidenced by the millions of dollars that it spends annually in advertising, marketing, and promoting its goods bearing the marks; the billions of dollars in annual revenue from sales of goods bearing the Coach Marks; and the understanding that the purchasing public has that the Coach Marks signify Coach goods"). Accordingly, the fifth factor weighs in Plaintiff's favor.

Plaintiff does not need to prove actual consumer confusion; rather it only needs to show a likelihood of confusion exists, particularly given the compelling evidence that the Defendant is attempting to "palm off" its products as being genuine PlayStation® Products. *CAE*, 267 F.3d at 685. Further, the Court may infer Defendant's intent to confuse consumers "from the similarity

of the marks where the senior mark has attained great notoriety." *AutoZone*, 543 F.3d at 934. Here, Defendant's intent to "palm off" its Counterfeit Product as a genuine PlayStation® Product is obvious; the Counterfeit Product is a clear knock-off of a genuine PlayStation® light. Table 1; *Compare* Figure 3 *with* Figure 4; [PSF 22, 29-30]. The Counterfeit Product has the same proportions and colors as the genuine PlayStation® Product. Table 1; *Compare* Figure 3 *with* Figure 4; [PSF 22, 29-30].

In sum, the undisputed material facts are "so one-sided that there can be no doubt" that all of the likelihood of confusion factors favor Plaintiff. *CAE*, 267 F.3d at 677. Therefore, Plaintiff is entitled to summary judgment on its trademark infringement and counterfeiting claim as a matter of law.

### C. Plaintiff Is Entitled to Summary Judgment Against Defendant on Its False Designation of Origin Claim

The test for trademark infringement under 15 U.S.C. § 1114(1) and 15 U.S.C. § 1125(a) are the same. *CAE*, 267 F.3d at 673-74. Since Plaintiff has established it is entitled to summary judgment on its trademark infringement and counterfeiting claim (Count I), it is also entitled to summary judgment on its false designation of origin claim (Count II).

## III. PLAINTIFF IS ENTITLED TO A STATUTORY DAMAGES AWARD AGAINST DEFENDANT FOR TRADEMARK COUNTERFEITING

Plaintiff seeks to recover an award of statutory damages of $50,000 as authorized by 15 U.S.C. § 1117(c) for Defendant's advertising, offering for sale, and sale of Counterfeit Products.[4] A plaintiff in a counterfeiting case may elect to receive "not less than $1,000 or more than $200,000 per counterfeit mark," and up to $2,000,000 per counterfeit mark when the counterfeiting is willful, "per type of goods or services sold, offered for sale, or distributed, as the court considers

---

[4] Pursuant to 15 U.S.C. § 1117(d), Plaintiff may, "at any time before final judgment is rendered" elect to recover an award of statutory damages, instead of actual damages and profits.

just." 15 U.S.C. § 1117(c)(1), (c)(2).  The amount sought is reasonable in light of the relevant factors, including: (1) the value of the PLAYSTATION Trademark and Plaintiff's efforts to promote and enforce the PLAYSTATION Trademark, (2) Defendant's willfulness, (3) Plaintiff's inability to prove actual damages, (4) Defendant's wide exposure over the Internet; (5) deterrence of Defendant; and (6) deterrence of similar online e-commerce sellers.

Statutory damages under 15 U.S.C. § 1117(c) are a "matter within the sole province of the court." *Tobinick v. Scripps Clinic Med. Group*, 81 Fed. Appx. 677, 679 (9th Cir. 2003).  Courts interpreting 15 U.S.C. § 1117(c) have analogized case law applying the statutory damage provision of the Copyright Act contained in 17 U.S.C. § 504(c).  *See Lorillard Tobacco Co. v. S&M Cent. Serv. Corp.,* 2004 U.S. Dist. LEXIS 22563, at *10 (N.D. Ill. Nov. 5, 2004).  The Seventh Circuit's standard for awarding statutory damages for copyright infringement under 17 U.S.C. § 504(c) is articulated in *Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th Cir. 1991).  Under the *Chi-Boy* standard, a court awarding statutory damages "enjoys wide discretion."  *Id.*  In computing the award amount, a court may consider factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent."  *Id.*  Courts in this District have also considered the significant value of a plaintiff's brand and the efforts taken to protect, promote, and enhance that brand in determining the appropriate dollar figure for the award.  *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *16.

An award of statutory damages serves dual interests in that it is remedial in nature but also intended to protect an important public interest.  *Sands, Taylor & Wood v. Quaker Oats Co.,* 34 F.3d 1340, 1347-48 (7th Cir. 1994).  Thus, courts have looked beyond restitution of profit and restoration of injury to award damages, holding that deterrence of future infringement by the

13

Defendant and others situated like him is an important factor. *Lorillard Tobacco Co. v. J.J. Shell Food Mart, Inc.*, 2005 U.S. Dist. LEXIS 26626, at *16 (N.D. Ill. Oct. 27, 2005). Courts have also held that damages awards limited to lost profits would have little to no deterrent effect on future violations – an infringer "must fear more than just having to turn over his ill-gotten gains to the rightful owners." *See Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563, at *17. Given the broader economic losses and harm to the job market caused by infringement, coupled with the possible dangers to consumers who are tricked into purchasing low quality, infringing products over the Internet, it is important to both penalize defendant and deter future violations. *Id.* at *18.

### A. The Value of the PLAYSTATION Trademark and Plaintiff's Enforcement Efforts

In determining an appropriate damage award, this Court should be guided by the *Lorillard* case and consider the "significant value of [the PlayStation®] brand and the efforts taken to protect, promote, and enhance that brand." *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *16. Plaintiff has expended millions of dollars in developing, advertising, and otherwise promoting the PLAYSTATION Trademark and PlayStation® Products. [PSF 28]. Plaintiff actively enforces SIE Inc.'s trademark rights in the United States, including filing trademark infringement and counterfeiting lawsuits. [PSF 33-34]. The requested statutory damages award should be given favorable consideration in view of the value of the PLAYSTATION Trademark, and the extensive steps taken by Plaintiff to protect, promote and enhance the PLAYSTATION Trademark and the PlayStation® brand. *See Monster Energy Co. v. Meng Chun Jing*, No. 15 C 277, 2015 U.S. Dist. LEXIS 86956, at *11 (N.D. Ill. July 6, 2015).

### B. Defendant's Counterfeiting of the PLAYSTATION Trademark Was Willful

Defendant's counterfeiting was willful and, therefore, at a minimum, warrants the requested statutory damages award. *See H-D U.S.A., LLC v. Guangzhou Tomas Crafts Co.,* No.

16-cv-10096, 2017 U.S. Dist. LEXIS 207613, at *13 (N.D. Ill. Dec. 18, 2017). "Infringement is willful when the infringer knows that it is infringing or acts 'in reckless disregard'" of that possibility." *H-D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000, 1045 (E.D. Wis. 2018) (citing *Wildlife Exp. Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511, 514 (7th Cir. 1994)). Knowledge or reckless disregard need not be proven directly but can be inferred. *Id.*

The Court can infer from Defendant's conduct that it had knowledge that its conduct constituted infringement. The PlayStation® Products are widely recognized, internationally popular, and readily accessible to the public over the internet, and the mark Defendant used is identical to the PLAYSTATION Trademark. Table 1, *supra*; *see* [PSF 12-13, 21, 30]. Therefore, at the very least, Defendant was acting with willful blindness and a reckless disregard of Plaintiff's trademark rights when it advertised, offered to sell, and sold the Counterfeit Product. *See Luxottica Grp. S.p.A. v. Chen*, 2017 U.S. Dist. LEXIS 29999, at *6-*7 (N.D. Ill. Mar. 2, 2017) (finding the defendant acted with willful blindness in part because "[Plaintiff's] trademarks are relatively well known, with [plaintiff] having invested significantly in ensuring widespread recognition of its brand, and could not have been so foreign or obscure to escape attention"). As such, Defendant's counterfeiting of the PLAYSTATION Trademark was willful because Defendant either had knowledge that its conduct constituted infringement, or at a minimum, showed a reckless disregard for Plaintiffs' trademark rights. *Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 590 (7th Cir. 1989) ("Willful blindness is knowledge enough").

### C. Defendant Rendered it Impossible for Plaintiff to Determine the Scope of, or Prove, Actual Damages

Congress added 15 U.S.C. § 1117(c), the statutory damages provision, "because proving actual damages in counterfeiting cases is 'extremely difficult if not impossible.'" *Deckers Outdoor Corp. v. Australian Leather Pty*, No. 16 CV 3676, 2020 U.S. Dist. LEXIS 150474, at *12-13 (N.D.

15

Ill. July 13, 2020) (citations omitted). This is because "a counterfeiter might hide, alter or destroy records, thus making it impossible for a plaintiff to determine the scope of, or be able to prove, actual damages." *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *10 (citations omitted).

During discovery, Defendant provided Plaintiff with deficient responses and minimal document production. [PSF 48]. In total, Defendant provided Plaintiff with 18 pages of document production, including 7 pages of screenshot evidence provided by Plaintiff to Defendant's counsel, an excerpt of which was originally filed as Plaintiff's Exhibit 2 to the Declaration of Jack Schecter [15]. [PSF 42, 46]. This evidence showed that Defendant sold and accepted money for 16 units of the Counterfeit Product. [PSF 43]. However, Defendant did not indicate whether those were the totality of Defendant's sales of the Counterfeit Product, provide an accounting for funds restrained in its Walmart account, complete a search for other products that infringe the PLAYSTATION Trademark, or provide Plaintiff a list of its other products that would allow Plaintiff to investigate whether Defendant's other products infringe the PLAYSTATION Trademark. [PSF 43-47]. Defendant rendered it impossible for Plaintiff to prove the scope of Defendant's infringement and actual damages; as such, Plaintiff should be entitled to the requested statutory damage award.

### D. Defendant's Wide Exposure Over the Internet Merits Statutory Damages Award

Defendant's ability to reach a vast customer base by advertising, offering for sale, and selling Counterfeit Products over the Internet through its Walmart store further merits the requested statutory damages award. Defendant reaches an enormous audience by selling its Counterfeit Product through Walmart; in 2024, Walmart reported its e-commerce sales surpassed $100 billion. [PSF 49]. Courts in this District have recognized the ability for e-commerce stores to reach a vast customer base and factored in this wide market exposure when calculating statutory damages. *See H-D U.S.A., LLC*, 2017 U.S. Dist. LEXIS 207613, at *11 ("the fact that defendant's

16

counterfeiting took place online favors a higher statutory damages award because online counterfeiting can reach a much wider audience than counterfeiting through a physical store").

### E. The Statutory Damages Award Must Sufficiently Deter Defendant and Similar Online Sellers

The remedy imposed must provide a sufficient deterrent effect to ensure that the guilty party will not engage in further infringing conduct. *Sands, Taylor & Wood,* 34 F.3d at 1348. As such, the damages award should be large enough to deter Defendant from again engaging in infringing and counterfeiting behavior. Similarly, there is a substantial need to deter other online sellers from engaging in infringing and counterfeiting conduct. According to the Fiscal Year 2024 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report, CBP made 32.3 seizures of goods with intellectual property rights violations totaling over $5.4 billion, an increase of $2.6 billion from 2023. [PSF 50].

## IV.  PLAINTIFF IS ENTITLED TO ATTORNEY FEES AND COSTS

The Lanham Act authorizes courts to, "in exceptional cases . . . award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The Seventh Circuit has said that "[d]istrict courts should use the broad equitable powers afforded them under § 1117(a)" to "properly serve[] the statute's goals of enforcing the trademark laws." *Te-Ta-Ma Truth Found.-Family of URI, Inc. v. World Church of the Creator*, 392 F.3d 248, 264-65 (7th Cir. 2004). Courts consider the losing party's "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Curry v. Revolution Labs., LLC*, No. 17 C 2283, 2024 U.S. Dist. LEXIS 114989, at *6-*7 (N.D. Ill. June 30, 2024).

Here, Defendant willfully infringed the PLAYSTATION Trademark and intended to palm off its Counterfeit Product as a genuine PlayStation® Product. There is also a strong and

compelling interest in deterring Defendant and other online e-commerce infringers and counterfeiters. For these reasons, this case is an exceptional one under the meaning of 15 U.S.C. § 1117(a), and Plaintiff respectfully requests the Court award Plaintiff attorney fees and costs.

## V. PLAINTIFF IS ENTITLED TO PERMANENT INJUNCTIVE RELIEF

In addition to the foregoing relief, Plaintiff respectfully requests entry of a permanent injunction enjoining Defendant from advertising, offering for sale, and/or selling Counterfeit Products or otherwise violating Plaintiff's rights in the PLAYSTATION Trademark. *See H-D U.S.A., LLC,* 2017 U.S. Dist. LEXIS 207613, at *14-15 (granting plaintiff's request for a permanent injunction barring defendant from advertising, offering for sale, and selling counterfeit products).

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an order granting summary judgment against Defendant for federal trademark infringement and counterfeiting (Count I) and false designation of origin (Count II). Plaintiff further requests the Court award Plaintiff $50,000 in statutory damages and an award of attorney fees and costs associated with this action. Finally, Plaintiff respectfully requests the Court enter a permanent injunction prohibiting Defendant from advertising, offering for sale, and/or selling products using the PLAYSTATION Trademark and transferring all assets in Defendant's financial accounts to Plaintiff.

Dated this 15th day of August 2025.     Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Rachel S. Miller
Jennifer V. Nacht
Lucas A. Peterson
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
rmiller@gbc.law
jnacht@gbc.law
lpeterson@gbc.law

*Counsel for Plaintiff*
*Sony Interactive Entertainment LLC*